IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CLINTON PARKISON                                              PLAINTIFF

v.                              No. 4:11-cv-265-DPM

CHESAPEAKE ENERGY CORP.;
CHESAPEAKE OPERATING INC.:
CHESAPEAKE MIDSTREAM OPERATING
LLC; CHESAPEAKE MIDSTREAM GAS
SERVICES LLC; CHESAPEAKE EXPLORATION
LLC; CHESAPEAKE ENERGY MARKETING INC.;
GREAT PLAINS OILFIELD RENTAL LLC; and JOHN
DOE, 1-10                                                    DEFENDANTS

EAGLE PRECISION PRODUCTS, Employer and
ARGONAUT INSURANCE CO. Carrier              INTERVENORS

## ORDER

Parkison worked on large "gas buster" tanks that are owned, installed, and maintained by the Defendants. The tanks are used at natural gas well sites to store hydraulic fracturing fluids. While descending a tank's staircase, Parkison leaned against a safety railing that he thought was secure, but which was missing securing pins. The railing gave way; Parkison fell; and he was severely injured. He sues alleging negligence. He also asks for punitive damages, saying Defendants recklessly disregarded the dangers in allowing loose railings with missing pins on the tanks. Defendants seek partial summary judgment on the punitives.

Parkison can recover punitive damages if he has offered clear and convincing evidence that Defendants' failure to secure the railing was malicious or so reckless in the face of danger that a reasonable juror could infer malice. ARK. CODE ANN. §§ 16-55-206 & 16-55-207. This bar is high. Negligence, no matter how gross, doesn't clear it. *In re Aircraft Accident at Little Rock, Arkansas on June 1, 1999*, 351 F.3d 874, 877 (8th Cir. 2003). And the Court must "view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). Parkison doesn't argue that Defendants intended his injury. So the fighting issues are whether Defendants "knew or ought to have known . . . that [their] conduct would naturally or probably result in injury[,]" and they acted (or failed to act) nonetheless. *Bayer Cropscience LP v. Schafer*, 2011 Ark. 518 at *21-22, 385 S.W.3d 822, 836 (2011). The issues come down to what Defendants knew, or should have known, about the pins and the railings before Parkison's accident. The Court takes the disputed facts in Parkison's favor. *In re Aircraft Accident*, 351 F.3d at 876.

No evidence exists that Defendants knew that the railing Parkison leaned against was not secured. Nothing had happened at the site, for

example, to alert anyone that the pins were missing or that the railing was wobbly. This is not a case like *D'Arbonne*, where the company sent the logging truck out on the road after the driver had warned he was having trouble holding the vehicle on the road and the truck needed repairs. *D'Arbonne Construction Co., Inc. v. Foster*, 354 Ark. 304, 309, 123 S.W.3d 894, 898-99 (2003). Nor are the circumstances like *Loudermill*, where Dow had known for decades that it was routinely and regularly exposing its employees to hazardous waste. *Loudermill v. Dow Chemical Co.*, 863 F.2d 566, 571 (8th Cir. 1988). None of the Defendants knew that, as one witness put it, this gas buster tank had "a fake rail" — a railing in place without securing pins. № 85-4 at 26.

Should they have known? Defendants acknowledge that all railings should be secured and that this accident was preventable. *№ 85-1 at 52.* Everyone recognized that people could get hurt if a railing was not functioning as a safe hedge. *№ 85-4 at 25-26.* No similar accident, though, had happened before at any of their job sites. *№ 77 at 3.* Parkison emphasizes the testimony from a Chesapeake foreman, Glen Wolford: at safety meetings "there's always talk about handrails, there has been for years. . . . Handrails

have been an issue forever, anywhere, and so it's always been a topic before this and after this incident." № 85-5 at 16. It's unclear who had responsibility, before the accident happened, to install and inspect the railing. Express Energy Services delivered the tank to the well site; Great Plains Oilfield Rental owned the tank; Cheseapeake Energy Corp. and its subsidiaries managed and oversaw the well site; and various sub-contractors worked on and serviced the tanks. Buz Holloway, a Chesapeake manager, acknowledges that responsibility ultimately falls on Chesapeake as the site's owner. № 85-4 at 68. Immediately after Parkison's accident, all the railings on all the Great Plains tanks were checked. Out of a total of around fifty, twenty two tanks were identified as having "the same pins missing." № 85-1 at 44, № 85-3 at 10, & № 85-4 at 31.

Taken as a whole, this record presents a strong case of negligence for the jury to decide. A reasonable juror could easily conclude that each Defendant should have been much more vigilant. But no clear and convincing evidentiary foundation for punitives exists. "[I]n order to superadd this element of damages by way of punishment," Defendants must have acted or failed to act with conscious indifference of probable injury, recklessly

disregarding obvious risk. *D'Arbonne Construction Co., Inc.*, 354 Ark. at 308, 123 S.W.3d at 898 (2003); *In re Aircraft Accident*, 351 F.3d at 878-79. "Because punitive damages are not a favorite of the law in Arkansas, significant limits are placed on their award." *In re Aircraft Accident*, 351 F.3d at 876 (citation and quotation omitted). The facts, viewed in the light most favorable to Parkison, show a widespread everybody/somebody problem: every company thought some other company was making sure the railings had pins. That's a home-run negligence case, not clear and convincing evidence that supports a reasonable inference of malice from reckless disregard.

* * *

Defendants' motion for partial summary judgment, № 76, is granted. Parkison's claim for punitive damages is dismissed with prejudice.

So Ordered.

D.P. Marshall Jr.
United States District Judge

16 December 2013

-5-